FILED
United States Court of Appeals
Tenth Circuit

February 17, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RICHARD A. SMITH,

      Plaintiff-Counter-Defendant-
      Appellant,

v.

UNITED STATES OF AMERICA,

      Defendant-Counter-
      Claimant-Appellee.

No. 07-4210

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:05-CV-418-TS)**

---

Theodore R. Weckler, Attorney, Salt Lake City, Utah, for Plaintiff-Counter-Defendant-Appellant.

Teresa T. Milton, Attorney, Tax Division, (Nathan J. Hochman, Assistant Attorney General, and Teresa E. McLaughlin, Attorney, Tax Division, with her on the brief) United States Department of Justice, Washington, D.C., for Defendant-Counter-Claimant-Appellee.

---

Before **HENRY, BRISCOE,** and **LUCERO**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

Plaintiff-Appellant Richard A. Smith filed a complaint in the district court pursuant to 28 U.S.C. § 1346(a)(1), seeking a refund of amounts paid in partial satisfaction of Internal Revenue Service ("IRS") assessments. Smith alleged the assessments were erroneously and illegally made because he was not a "responsible person" as defined by 26 U.S.C. § 6672. Defendant-Appellee United States filed an answer and counterclaim for amounts still owed. The case proceeded to jury trial. At the close of his presentation of evidence, Smith moved for judgment as a matter of law, which the district court denied after all the evidence had been presented. After a jury verdict for the United States, Smith moved for a new trial. Smith timely appeals the district court's denial of his motion for judgment as a matter of law and his motion for new trial.

We have jurisdiction over Smith's appeal pursuant to 28 U.S.C. § 1291 and affirm.

I

Woodruff Printing, Inc. ("Woodruff Printing") was incorporated in 1959 and throughout its incorporation was wholly owned by members of the Woodruff family. Rex Woodruff owned controlling shares of Woodruff Printing and managed the corporation until some time in the 1990s. During 2002-2003, the time period at issue herein, Mark Woodruff, Rex Woodruff's son, was the president of Woodruff Printing.

Smith began working for Woodruff Printing in 1991, and he ultimately

2

became the corporation's general manager. Smith left Woodruff Printing in 2000, but later was contacted by Rex and Mark Woodruff and asked to return. Smith went back to work for Woodruff Printing in January 2002. Mark Woodruff wanted Smith to return as accounting manager, but Smith insisted that he could only help Woodruff Printing if he were general manager and put in charge of overall operations. Mark Woodruff understood that upon Smith's return, all of Woodruff Printing's departments would report to Smith and Smith would be making most of the decisions in the operation areas. After Smith's return to Woodruff Printing in 2002, Smith was also Woodruff Printing's primary contact with the Internal Revenue Service ("IRS") for a system Smith set up to pay employment taxes electronically. Smith was aware from reviewing Woodruff Printing's records prior to his return that Woodruff Printing's financial situation was "bleak."

In June 2002, however, Smith sent a memorandum to Mark Woodruff in which he made projections that Woodruff Printing would have positive net income for 2002. Yet by July or August 2002, many of Woodruff Printing's suppliers began demanding payment on delivery. As a result, Mark Woodruff developed priorities that favored making payments to two of Woodruff Printing's bank lenders, to Woodruff Printing's landlord, and to certain of the materials suppliers. In August 2002, an employee of Woodruff Printing's accounting department sent an e-mail to Smith and Mark Woodruff in which she detailed

Woodruff Printing's unpaid tax liabilities, including sales taxes, state taxes, and federal employment taxes. According to the e-mail, there were then unpaid employment taxes for June and July in a total amount of $33,305.22. Despite this unpaid amount, no payments were made to the IRS during August 2002.

After Mark Woodruff received the e-mail, he held a meeting with the accounting department employee and Smith. Mark Woodruff testified that he came away from that meeting with the understanding that the accounting department "would continue to work on [the tax problem]." Later in the fall of 2002, however, Mark Woodruff found delinquency notices from the IRS in the accounting department. In late October 2002, Mark Woodruff sent an e-mail to Smith asking Smith to prepare and provide a schedule of payments to be made for the next two months for all Woodruff Printing's accounts payable. In that e-mail, Mark Woodruff pointed out that Woodruff Printing had paid tax penalties for being late on taxes, and that taxes should always be kept current.

At some point near the end of 2002, Mark Woodruff informed other Woodruff family members about Woodruff Printing's tax problem. It was determined that Mark Woodruff would monitor Woodruff Printing's payments to creditors more closely, and it was agreed that Smith should limit his check writing to amounts less than $5000. Mark Woodruff testified, however, that he never limited Smith's authority to pay employment taxes via electronic transfers. The United States also introduced evidence at trial that Smith continued to write

4

checks to Woodruff Printing's creditors in amounts larger than $5000.

Mark Woodruff's testimony was inconsistent, at best. He testified that in 2002 and 2003, the standard operating procedure was for Smith to discuss with him the cash flow problem and the priorities for determining what should be paid. He later testified that in 2002, he and Smith discussed how to handle the taxes, and that his strategy then was to "keep the presses rolling." He also testified that in 2003, he made the final decision as to which creditors should be paid, and that he was the one who decided to pay or to not pay taxes in 2003. In sum, his testimony at trial alternated between stating that he and Smith discussed which bills to pay, and stating that he decided which bills to pay.

It is undisputed that Smith was aware throughout the latter part of 2002, and all of 2003 until Woodruff Printing ceased operations, that Woodruff Printing's federal employment taxes were not being paid. At one point Smith advised Mark Woodruff to not pay bank loans and to pay the IRS, but Smith testified he did not pay the payroll taxes because in July 2002 Mark Woodruff told Smith to defer paying the payroll taxes in order to keep the business operating by paying suppliers. During the period in question, there were insufficient funds available to pay all creditors and also pay all taxes. Smith testified that he reported to Mark Woodruff, got payment priorities from Mark Woodruff, and did not have authority to override Mark Woodruff.

Woodruff Printing's bookkeeper testified in support of Smith. She stated

5

that during 2002, Mark Woodruff's creditor payment priorities were to first pay two bank loans, and then to pay vendors. She also testified that Mark Woodruff had the final decision-making authority in Woodruff Printing, and that in meetings during 2002, Mark Woodruff had the final say as to which creditors would be paid. She further testified that in August 2002, she had a discussion with Smith about how much was owed to the IRS for payroll taxes, and she testified that she discussed the tax problem with Mark Woodruff three or four times in 2002. Finally, she testified that Rex and Mark Woodruff had ultimate authority over the management and finances of Woodruff Printing.

Drew Elkins, a former employee of Woodruff Printing, offered to purchase Woodruff Printing in March 2003, but his offer was rejected by Rex and Mark Woodruff. Elkins testified that Smith handled most operational problems, but that Mark Woodruff had the final word as the "owner" of Woodruff Printing. Elkins also testified that "on a couple of occasions" Smith had generated checks "for a tax deal" and given them to Mark Woodruff to sign, but that Mark Woodruff refused. Elkins testified, however, that he did not know that employment taxes were set up by Woodruff Printing to be paid electronically throughout 2002-03.

Woodruff Printing eventually ceased operations in 2003. The IRS made assessments against Smith pursuant to 26 U.S.C. § 6672, after making a determination that Smith was a person responsible for withholding, accounting for, and paying taxes withheld from the wages of the employees of Woodruff

6

Printing for the last two quarters of 2002 and the first three quarters of 2003, who willfully failed to do so. The total assessments made against Smith were $279,353. Smith paid a portion of the assessment and then filed suit, seeking refund of that amount. The United States counterclaimed for amounts still owed.[1]

II

A. *Judgment as a Matter of Law*

Smith timely moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, Aplt. App. at 378-84, and on appeal he continues to assert that he is "entitled to judgment on the facts" on the issue of "responsibility." Aplt. Br. at 17-18.

We review de novo the district court's denial of Smith's motion for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. Loughridge v. Chiles Power Supply Co., 431 F.3d 1268, 1280 (10th Cir. 2005). We make all reasonable inferences in favor of the non-moving party. Id. Both before the district court and on appeal, "[j]udgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position." Id.

---

[1] According to the United States' brief, at the time the United States counterclaimed against Smith for amounts owed under its assessment, the IRS also asserted a claim in Smith's third-party action against Mark Woodruff for unpaid amounts assessed under § 6672. The district court entered a stipulated judgment against Mark Woodruff for $324,732, and he was dismissed from the action. Appellee Br. at 3 n.2.

(internal quotations omitted). This is a difficult and high standard for the movant to satisfy.

Under 26 U.S.C. §§ 3102(a) and 3402(a), employers are required to withhold federal social security and income taxes from wages paid to employees, and to remit those withheld amounts to the IRS on a regular basis. If an employer withholds these payroll taxes (also known as "trust-fund taxes"), but fails to pay them over to the government, the employee is nevertheless credited with having paid the taxes, and the government may not require any additional payment from the employee. Slodov v. United States, 436 U.S. 238, 243 (1978).

The IRS may then effect payment of the withheld taxes from the employer, via 26 U.S.C. § 6672. Id. at 244-45 ("[T]he officers or employees of the employer responsible for effectuating the collection and payment of trust-fund taxes who willfully fail to do so are made personally liable to a 'penalty' equal to the amount of the delinquent taxes."); see also Taylor v. I.R.S., 69 F.3d 411, 413 (10th Cir. 1995) ("When an officer or employee of a corporation fails to remit withheld taxes to the government, he may be subject, inter alia, to the penalty provisions of 26 U.S.C. § 6672.").

Section 6672 of the Internal Revenue Code provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in

8

> addition to other penalties provided by the law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). "Specifically, the penalty under § 6672 can be assessed against any officer or employee of a corporation who: (1) is under a duty to 'collect, truthfully account for, and pay over any tax imposed by this title'—i.e., a 'responsible person'; and (2) 'willfully fails' to do so." Taylor, 69 F.3d at 413 (quoting 26 U.S.C. § 6672). Smith challenges the jury's determination that he was a "responsible person"; the "willfulness" prong is not challenged in his appeal of the denial of his motion for judgment as a matter of law. See Aplt. Br. at 16-19.

Section 6671(b) defines "person" as "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b). The term "responsible person" has been widely discussed:

> Courts have generally given broad interpretation to the term 'responsible person' under section 6672. A person is responsible within the meaning of the statute if that person is required to collect, truthfully account for or pay over any taxes withheld from the wages of a company's employees. The responsible person generally is, but need not be, a managing officer or employee, and there may be more than one responsible person. Indicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire

9

and fire employees. Among other things, therefore, a corporate officer or employee is responsible if he or she has significant, though not necessarily exclusive, authority in the general management and fiscal decisionmaking of the corporation.

Denbo v. United States, 988 F.2d 1029, 1032 (10th Cir. 1993) (internal quotations and citations omitted); see also Bradshaw v. United States, 83 F.3d 1175, 1178-79 (10th Cir. 1995) (reciting same standards).

The evidence at trial showed that Smith was the general manager of Woodruff Printing during 2002 and 2003. Smith came back to Woodruff Printing in 2002, insisting that he be placed in charge of "overall operations." Smith had the responsibility to oversee the finance and accounting functions at Woodruff Printing during the 2002-03 period. During 2002, Smith had the independent authority to draw checks on Woodruff Printing's bank accounts. Although there was testimony that Smith's check writing authority was limited in 2003 to $5000, the IRS introduced evidence at trial that Smith wrote a substantial number of checks in 2003 that were for amounts larger than $5000. There was also testimony that Mark Woodruff never limited Smith's authority to electronically pay the payroll taxes.

Smith argues that he was simply doing what he was told by Mark Woodruff, and that he had no power over creditor priority at Woodruff Printing. However, it is clear that: (1) Smith was aware during the quarters at issue in 2002 and 2003 that Woodruff Printing's payroll taxes were not being paid; and (2)

10

Smith paid other creditors rather than paying the payroll taxes. In addition, although Mark Woodruff and Smith had regular meetings discussing creditor priorities, Mark Woodruff also testified that he did not limit Smith's authority to make electronic funds transfers for payment of payroll taxes at any time during 2002 or 2003. And, Mark Woodruff sent an e-mail to Smith in October 2002 stating that taxes should always be kept current.

The fact that Mark Woodruff had more control over creditor payment than Smith is not determinative; "significant" control is all that is required. See Denbo, 988 F.2d at 1033 ("However, while it is clear that Allred exercised greater control over the corporation than Denbo, section 6672 does not confine liability for the unpaid taxes only to the single officer with the greatest or the closest control or authority over corporate affairs. It suffices that Denbo had significant, as opposed to absolute, control of the corporation's finances." (internal quotations omitted)); see also Taylor, 69 F.3d at 416 ("If an individual possesses sufficient indicia of responsibility, he is a 'responsible person' under § 6672 regardless whether he: (1) has the final say as to which creditors should be paid; or (2) has the specific job within the corporate structure to see that the taxes are paid over to the government. The crucial inquiry is whether the person had the 'effective power' to pay the taxes—that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed. Liability under § 6672 extends to all responsible corporate officers or employees, not just to the

11

single 'most' responsible individual." (internal quotations and citations omitted)).

Smith relies on <u>Vinick v. United States</u>, 205 F.3d 1 (1st Cir. 2000), in support of his argument that the facts established at trial do not show that he was a "responsible person." In <u>Vinick</u>, the First Circuit stated the "central question in determining whether a taxpayer is a responsible person" is "whether [the taxpayer] had the power to pay the taxes during the quarters in question." <u>Id.</u> at 10. The First Circuit found: (1) that the taxpayer had not exercised any decision-making authority over which creditors were paid; (2) that another individual was "in charge of the day-to-day operations"; (3) that merely because the taxpayer had the title of "corporate treasurer," because the substance of his work involved no authority over finances, the titular authority was not heavily relevant; and (4) that the taxpayer having check-signing authority was only relevant if the taxpayer was in a position to exercise his authority (e.g., did the taxpayer have access to the checkbook?). <u>Id.</u> at 12-13.

The First Circuit repeatedly noted in <u>Vinick</u> that the central question was whether the taxpayer had routine involvement in the day-to-day management such that the taxpayer had control over daily operations. <u>Id.</u> at 14. The <u>Vinick</u> court concluded: "Absent a finding that [the taxpayer] possessed actual, exercised authority over the company's financial matters, including the duty and power to determine which creditors to pay, as a matter of law he cannot be a responsible person." <u>Id.</u> at 15.

12

Contrary to Smith's assertion, the <u>Vinick</u> case does not support his argument that he is not a "responsible person." Unlike the taxpayer's involvement in the company in <u>Vinick</u>, Smith did have day-to-day involvement of Woodruff Printing. Smith was the general manager; throughout 2002 and 2003 he wrote checks to pay Woodruff Printing's accounts payable. Smith met "routinely" with Mark Woodruff about the payroll tax liability. It is true that there is conflicting testimony about how much "power" Smith had over creditor priority. However, the standard is whether Smith "had the 'effective power' to pay the taxes—that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed." <u>Taylor</u>, 69 F.3d at 416. It is undisputed that Smith's authority to make the electronic payments of the payroll taxes was never limited, and Mark Woodruff directed Smith at one point to keep the taxes current. To be a "responsible person," Smith need not have had exclusive control over the payments made to the accounts payable of Woodruff Printing.

Although the result here appears harsh, the statute at issue, and the line of cases from our circuit interpreting that statute, require us to affirm the district court's denial of Smith's motion for judgment as a matter of law. This is especially true considering the standard of review by which we are bound. <u>See</u> <u>Loughridge</u>, 431 F.3d at 1280 (stating that upon review of a motion for judgment as a matter of law, the reviewing court must make all reasonable inferences in

13

favor of the non-moving party and that "[j]udgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position").

Although it is a close case, considering the fact that some of the "traditional" indicia of responsibility are missing—Smith was not a stockholder in Woodruff Printing and it was a disputed fact whether Smith had authority to hire/fire—the indicia are merely factors to be considered amongst the totality of circumstances. In Denbo we emphasized that courts, including our court, have generally given a broad interpretation to the term "responsible person" for purposes of § 6672 liability and Denbo states that the "responsible person" generally satisfies the listed indicia, but need not in every case. Given our scope of review, we cannot conclude the district court erred in denying Smith's motion for judgment as a matter of law. When referencing the relevant indicia of a "responsible person," we cannot say the jury's verdict was against the great weight of all the evidence.

B. *Motion for a New Trial Based on Jury Instructions*

After the jury verdict against him, Smith moved for a new trial pursuant to Federal Rule of Civil Procedure 59, on the basis that the jury instructions given by the district court were in error. See Aplt. App. at 102-07 (district court order denying Smith's motion for a new trial). In reviewing challenges to jury instructions, this court must determine whether the jury instructions viewed as a

14

whole "properly stated the applicable law and directed the jury to consider matters within its province." Gardetto v. Mason, 100 F.3d 803, 816 (10th Cir. 1996). "A district court's decision to give a particular jury instruction is reviewed for abuse of discretion; ultimately, however, we apply a de novo standard of review to determine the propriety of an individual jury instruction to which objection was made at time of trial." Reed v. Landstar Ligon, Inc., 314 F.3d 447, 154 (10th Cir. 2002) (internal quotations omitted).

Smith makes multiple challenges to the jury instructions, alleging that: (1) the district court's jury instruction number 20 misstated the law defining "responsible person"; (2) the district court's jury instruction number 21A misstated the law regarding orders from a superior; (3) the district court erred by failing to give Smith's proposed instructions regarding infusing capital into the corporation, closely-held corporations, and a reasonable cause defense; and (4) the alleged errors in totality constituted cumulative error.

1. Jury Instruction Number 20 ("Responsible Person" Defined)

Smith contends that the district court's jury instruction number 20 failed to accurately state the law defining "responsible person." Jury instruction number 20 stated, in pertinent part:

> The term 'responsible person' includes any person who is connected or associated with the corporation-employer in such a manner that he has the power to see that the taxes are paid, or the power to make significant decisions concerning the corporation, or determines that

15

creditors are to be paid and when they are to be paid.

Determining who is a responsible person is fact specific. The facts of each corporation-employer may and frequently do vary.

The term 'responsible person' may include corporate officers, employees, or members of the board of directors. But not every corporate officer, employee, or board member is necessarily a responsible party. The meaning of the term is very broad and is not limited to the person who actually prepares the payroll checks or the tax returns. The 'responsible person' need not even be authorized to draw checks for the corporation so long as the person has the power to decide who will get such checks. In other words, the 'responsible person' is any person who can effectively control the finances, or determine the bills that should or should not be paid.

Aplt. App. at 83.

Smith argues that the first sentence––"The term 'responsible person' includes any person who is connected or associated with the corporation-employer . . . [who] determines that creditors are to be paid"––should have used the word "which" in place of the word "that" to state "[who] determines <u>which</u> creditors are to be paid" rather than "[who] determines <u>that</u> creditors are to be paid" as stated in the instruction given. Smith also argues that the instruction incorrectly implied that check-writing authority was an indicia for responsibility because it stated: "In other words, the responsible person is any person who can effectively control the finances, or determine that bills should or should not be paid."[2] Smith

_____

[2] At oral argument, Smith's counsel argued that the last line of the last paragraph of the instruction should have been stated in the conjunctive rather than

(continued...)

16

contends these errors amount to a misstatement of the law defining the phrase "responsible person."

Smith's arguments are not persuasive. The determination "that" a creditor should be paid necessarily requires a determination "which" creditor should be paid. In addition, the instruction correctly informs the jury that the definition is fact-intensive, tells the jury that the "responsible person" will have "the power to decide <u>who</u> will get such checks," and informs the jury that the "responsible person" is "any person who can . . . determine the bills that should or should not be paid." <u>See</u> <u>Taylor</u>, 69 F.3d at 416 ("If an individual possesses sufficient indicia of responsibility, he is a 'responsible person' under § 6672 regardless whether he: (1) has the final say as to which creditors should be paid; or (2) has the specific job within the corporate structure to see that the taxes are paid over to the government. The crucial inquiry is whether the person had the 'effective power' to pay the taxes—that is, whether he had the actual authority or ability, in

---

[2](...continued)
in the disjunctive form (<i>i.e.</i>, "the 'responsible person' is any person who can effectively control the finances, <u>and</u> determine the bills that should or should not be paid" rather than "the 'responsible person' is any person who can effectively control the finances, <u>or</u> determine the bills that should or should not be paid"). Smith, however, did not raise this issue in his opening brief, and therefore we will not consider it herein. <u>See</u> <u>Bronson v. Swenson</u>, 500 F.3d 1099, 1107 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."). In his opening brief, Smith focused on the first paragraph of the instruction when arguing instruction number 20 erroneously used the disjunctive when describing who qualifies as a "responsible person." Aplt. Br. at 22.

view of his status within the corporation, to pay the taxes owed." (internal citations omitted)).

Reading the instruction in its entirety, the instruction makes clear that it is not mere check-writing authority that determines whether an individual is a "responsible person," but that the "responsible person" must have a higher degree of control over the corporation's finances. See Denbo, 988 F.2d at 1032 ("Indicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees. Among other things, therefore, a corporate officer or employee is responsible if he or she has significant, though not necessarily exclusive, authority in the general management and fiscal decisionmaking of the corporation." (internal quotation omitted)). The jury instruction "properly stated the applicable law." Gardetto, 100 F.3d at 816.

Furthermore, our review is to determine whether, taken as a whole, the jury instructions accurately state the governing law. Id. Any ambiguity left by jury instruction number 20 is immediately rectified by jury instruction number 21, which stated:

> A corporate officer or employee is a responsible person if he or she has significant, though not necessarily exclusive, authority in the general management and fiscal decision-making of the corporation.
>
> Whether a person is a responsible person must be decided by the unique facts of each case. Indicia of

18

responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, and the ability to hire and fire employees. If an individual possesses sufficient indicia of responsibility, he or she is a responsible person under the law regardless of whether he or she has the final say as to which creditors should be paid or has the specific job within the corporate structure to see that the taxes are paid over to the government. The crucial inquiry is whether the person had the effective power to pay the taxes—that is whether he or she had the actual authority or ability, in view of his or her status within the corporation, to pay the taxes owed.

Aplt. App. at 84. Jury instruction 21, which is not challenged by Smith on appeal, reinforces the point made to the jury in instruction number 20: the factual finding that an individual is a "responsible person" is fact-intensive and based on the unique facts of each case. Jury instruction 21 also reinforces the ultimate question: whether Smith "had the effective authority to pay the taxes—that is whether he . . . had the actual authority or ability, in view of his . . . status within the corporation, to pay the taxes owed." Id. The jury instructions, as a whole, properly stated the overarching law on the question of who qualifies as a "responsible person."

2. Jury Instruction Number 21A (Orders of a Superior)

Smith contends that the district court's jury instruction number 21A failed to accurately state the law regarding orders from a superior. Jury instruction number 21A states: "The orders of a superior to prefer other creditors over the United States does not relieve a corporate officer or employee of liability as a

19

responsible party." Aplt. App. at 85.

Smith contends there are three problems with instruction number 21A: (1) the instruction is "unduly suggestive" because it suggests that a person is a "responsible person" because he follows the orders of a superior; (2) the instruction is a misapplication of Jay v. United States, 865 F.2d 1175 (10th Cir. 1989); and (3) the instruction is a misapplication of Salzillo v. United States, 66 Fed. Cl. 23 (2005), a case which Smith argues should be followed by this court.

Regarding Smith's first challenge to instruction number 21A, the instruction does not suggest that a person is a "responsible person" because he follows orders of a superior. The instruction merely states that following orders does not relieve an individual from being held liable as a "responsible person."

Smith's second challenge to instruction number 21A is a closer question, but ultimately fares no better. Smith contends that Jay downplayed the materiality of check-writing authority when that check-writing authority was subject to a superior's restrictions. Jay involved a taxpayer who worked as a bookkeeper for a company that did not pay its withholding taxes. 865 F.2d at 1176. The taxpayer, Jay, "was aware of policy decisions by the corporation's executives, signed corporate checks and paid bills to creditors from the corporation's bank account, which included funds withheld from employees' wages." Id. But Jay acted according to the instructions from his boss, Helmuth, as to which major bills to pay. Id. Helmuth testified that he decided whether to

20

prefer other creditors to the United States. Id. at 1177.

When read in context, our ruling in Jay was not that check-writing authority subject to a superior's restrictions was not material, but rather that there were unresolved issues of material fact concerning the extent of Jay's authority over corporate decision-making. Id. at 1179. The district court had granted summary judgment against Jay, concluding he was a "responsible person" under § 6672. Id. at 1176. On appeal Jay contended he was not a "responsible person." Id. at 1177. We reversed the district court, concluding that "This is not a case where the taxpayer necessarily possessed authority to pay all bills . . .; nor did Jay receive generalized instructions on priorities . . . . Here, the president and general manager of the corporation specifically told Jay to pay other creditors, not the United States." Id. at 1179 (citations omitted) (emphasis added). We refused to conclude as a matter of law, however, that Jay was not liable: "We do not hold that Jay is absolved of liability." Id. Instead, we remanded the case for a trial on the merits so that a jury could decide whether Jay was a "responsible person" under § 6672, concluding issues of material fact remained for resolution by a jury.

Therefore, Jay stands for the proposition that signing checks at the direction of one's superior does not, standing alone, relieve one from being a "responsible person" for purposes of § 6672 but, rather, is merely a fact the jury should consider in the wide range of factors that determines whether an individual is a "responsible person" under § 6672. The district court's instruction in the

21

present case did not misapply Jay. Additionally, Smith's involvement in Woodruff Printing was much greater than the taxpayer's involvement in Jay. Smith was the general manager, he oversaw day-to-day operations, he regularly met with Mark Woodruff regarding payment priorities, and he did more than "sign" checks––he was the IRS point-of-contact for the electronic payment of payroll taxes. The factual background in Jay and the facts presented here are greatly divergent.

Finally, Smith's third challenge to instruction number 21A also fails. Smith contends that we should follow the holding of Salzillo, a recent decision from the Court of Federal Claims. Salzillo begins its analysis, however, by noting that "instructions from a superior not to pay taxes do not . . . take a person otherwise responsible under section 6672(a) out of that category." 66 Fed. Cl. at 33 (citing cases) (internal quotations omitted) (emphasis added). The question in Salzillo was whether the taxpayer was "otherwise responsible." Id. at 34. The court ultimately concluded that he was not, based heavily on the fact that the taxpayer had attempted to pay the company's payroll taxes to the IRS, but his efforts were detected, and overruled, and the money was prevented from being sent. The court stated:

> Accordingly, this is not a case in which a superior simply ordered an employee not to pay the IRS. Rather, here, [the superior] took steps not only to designate the creditors that would be paid, but also to ensure that others, including the IRS, would not be paid, thereby circumscribing [the

22

taxpayer]'s ability to transfer corporate funds to the IRS in payment of [the company's] delinquent payroll taxes.

Id. The jury instruction given in the present case comports with both the holding in Salzillo, and our holding in Jay: the contrary orders of a superior are an insufficient basis for relieving an employee of liability as a "responsible person." The contrary orders of a superior are merely one factor, among many, to be considered when determining whether an individual is a "responsible person."[3] The jury was not improperly instructed on the law, and there is no basis for a new trial based on this jury instruction. Gardetto, 100 F.3d at 816.

3. Smith's Proposed Instructions

Smith next contends that the district court erred in refusing to adopt certain of his proposed instructions. Smith proposed instructions regarding the effect of infusing capital into a corporation, the identity of Woodruff Printing as a closely-held corporation, and the reasonable cause defense. Aplt. App. at 1-6. None of these proposed instructions were adopted by the district court.

Regarding Smith's proposed instruction pertaining to infusion of capital

___

[3] To be sure, the Salzillo court also focused on the distinction between the "theoretical authority to effectuate such a payment" and the "effective ability to pay taxes over to the IRS." Id. at 35. This emphasis is not distinguishable from our cases which hold that the central factual inquiry is whether an individual had "effective power" to pay payroll taxes. See, e.g., Taylor, 69 F.3d at 416 (defining the standard as whether the taxpayer had the effective power to pay the taxes—that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed). The jury was instructed on this standard in instruction number 20.

23

into a corporation as an indicia of responsibility, Smith is correct that we have previously included the infusion of capital into a business as one factor which a jury could consider in determining whether an individual was "a person responsible for accounting for or paying over withholding taxes to the government." Denbo, 988 F.2d at 1033 (noting that the taxpayer "was responsible for infusing capital into the corporation, often pledging his own assets as collateral" and that the taxpayer's "financial involvement in the corporation, along with his check-signing authority, gave him the effective power to see to it that the taxes were paid"). Mark Woodruff testified that he was unaware of any loans that Smith ever made to Woodruff Printing, although Rex and Mark Woodruff made personal loans to Woodruff Printing during budget shortfalls. Although it is true that the infusion of capital, or lack thereof, is one factor the jury could have considered in making its factual determination of Smith as a "responsible person," the jury instructions, as a whole, properly stated the overarching law on the question of who qualifies as a "responsible person" based on the unique facts of each case.

The same analysis also applies regarding Smith's proposed closely-held corporation instruction. Smith requested a jury instruction that Woodruff Printing was a closely-held, family owned and operated business, and that the nature of the power structure within Woodruff Printing may have significantly influenced how managerial decisions were made at Woodruff Printing, as well as Smith's ability

24

to counter the Woodruff family's decisions. As we have stated, the jury was adequately instructed that they were to consider the unique facts of the case to determine whether Smith was a "responsible person" under the law. The jury instructions adequately defined this standard for the jury and an additional instruction identifying Woodruff Printing as a closely-held corporation was not required.

Finally, Smith challenges the district court's failure to instruct on the reasonable cause defense, which would address whether his actions were willful as required by § 6672. In Finley v. United States, 123 F.3d 1342, 1348 (10th Cir. 1997) (en banc), we recognized the "reasonable cause exception" to "excuse the failure to pay" payroll taxes held in trust for the government. We further held that the reasonable cause exception to § 6672 liability should be "narrowly construed." Id. We then concluded that "reasonable cause sufficient to excuse a responsible person's failure to pay withholding taxes should be limited to those circumstances where (1) the taxpayer has made reasonable efforts to protect the trust funds, but (2) those efforts have been frustrated by circumstances outside the taxpayer's control." Id. In Finley, we remanded the case for a new trial to provide the taxpayer an opportunity to present his defense.

The facts in Finley differed from those presented here. Under the facts in Finley, the taxpayer directed that the payroll taxes be paid, and by the time he found out his instruction had not been followed, there was no longer any money

25

to pay them.  Here, Smith knew the payroll taxes were overdue, knew that other creditors were being paid instead of the payroll taxes, and never took any direct action to pay the taxes.  He discussed the payroll tax issue repeatedly with Mark Woodruff throughout 2002-03, but never actually attempted to pay the taxes. According to the evidence presented, he was even directly instructed in one instance to keep the taxes current.  The reasonable cause exception to § 6672 liability does not fit the facts of this case.[4]

Smith has not shown that the district court abused its discretion in refusing to give Smith's requested jury instructions.  Viewing the jury instructions as a whole, the jury was properly instructed on the law relating to § 6672 liability.

4.  Cumulative Error

As Smith has not prevailed in his challenge to instructions 20 and 21A and to the district court's failure to give Smith's requested instructions, there can be no cumulative error.  See McCue v. State of Kan., Dep't of Human Res., 165 F.3d 784, 791 (10th Cir. 1999) ("A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not

---

[4]  We again examined the reasonable cause exception in Howell v. United States, 164 F.3d 523 (10th Cir. 1984).  In Howell, we held that a fact issue remained whether the taxpayer's conduct was willful, based, in part, on the fact that underwriters had seized control of the taxpayer's funds and directed payment of funds contrary to the taxpayer's usual practice of paying the payroll taxes from a "cushion account" that he had maintained.  In the instant case, we do not have similar facts where the taxpayer has sent funds for payment of the payroll taxes, but then the actual payment was thwarted by the acts of others.

26

reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." (internal quotation marks omitted)); Getter v. Wal-Mart Stores, Inc., 66 F.3d 1119, 1125 (10th Cir. 1995) ("Cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.").

### III

The judgment of the district court is AFFIRMED.