FILED
United States Court of Appeals
Tenth Circuit

April 10, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

REX A. HODGES,

    Defendant - Appellant,

and

LISA A. HODGES; BANK OF AMERICA MORTGAGE; OKLAHOMA TAX COMMISSION; MIDLAND FUNDING, LLC,

    Defendants.

No. 16-6229
(D.C. No. 5:15-CV-00043-C)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. INTRODUCTION

Rex A. Hodges failed to pay federal payroll taxes withheld from employee paychecks during his time as manager of several nursing home facilities in Oklahoma. The Internal Revenue Service (IRS) assessed taxes against Rex and attached liens against real property (the property) he shared with his wife, Lisa A. Hodges.[1] The United States then sued the Hodgeses in order to reduce the assessments to judgment and to foreclose on the liens. The district court granted summary judgment to the government, reducing the assessments to judgment and allowing foreclosure to proceed, but only on liens in place before Rex transferred his interest in the property to Lisa. We affirm.

## II. BACKGROUND

### A. *Factual History*

In May 2000, the Oklahoma Department of Health appointed Rex as temporary manager of four nursing homes.[2] As temporary manager, Rex "assume[d] operating control of the facilit[ies]" and had "sufficient power and duties to ensure that the residents of the facilit[ies] receive[d] adequate care." Okla. Stat. tit. 63, § 1-1914.2. Rex was in charge of day-to-day operations and was responsible for depositing the employees' payroll tax withholdings to the IRS and filing federal payroll tax returns. He

---

[1] To avoid confusion between Rex and Lisa Hodges, we refer to the parties by their first names.

[2] The Oklahoma Department of Health "may place a qualified person in a [nursing home] facility as a temporary manager" in the event that, *inter alia*, "[t]he conditions at the facility pose immediate jeopardy to the health and safety of the residents of the facility." Okla. Stat. tit. 63, § 1-1914.2.

also had check-signing authority on the payroll account and had authority to hire and fire employees. Overall, Rex maintained ultimate decision-making authority over the nursing homes, and acknowledged he "was in charge of all four homes."

During his time as temporary manager, Rex paid the nursing homes' operating expenses and net payroll, and paid himself a salary of $22,000 per month. But although the nursing homes' payroll processor sent him biweekly reports detailing the amount of payroll taxes that had been withheld from the employees' paychecks and instructions for making the deposits to the IRS, Rex failed to pay the employees' withheld payroll taxes to the IRS. Rex was removed as temporary manager of the four nursing homes in February 2001.

Rex then decided to invest in his own nursing home. On October 26, 2001, Rex and a former coworker, John Stout, formed the Sand Springs Care Center LLC (Sand Springs), and Rex was named manager. His role as manager of Sand Springs was similar to his role as temporary manager of the four nursing homes and included the same powers and responsibilities as detailed above.

Rex paid Sand Springs' operating expenses and net payroll, and paid himself a salary. But once again, he failed to remit to the IRS the payroll taxes withheld from the employees' paychecks. The IRS determined Rex was a "responsible person" who willfully failed to pay over taxes in violation of 26 U.S.C. § 6672 (I.R.C. § 6672), and in February 2004 the IRS began assessing penalties against Rex personally in the amount of the unpaid payroll taxes accrued during his time as temporary manager of the four nursing homes, and his time as manager of Sand Springs.

Federal tax liens attached to Rex's interest in his property as of the dates of the assessments (beginning in February 2004). Rex and his wife, Lisa, had purchased the property in 1998 as joint tenants. On April 30, 2004, Rex transferred his interest in the property to Lisa by quitclaim deed. Because the IRS continued assessing penalties against Rex after the transfer, tax liens also continued to attach to the property after the transfer. The IRS sent Lisa a Notice of Federal Tax Lien on January 26, 2015, identifying Lisa as Rex's nominee.[3]

### B.   Procedural History

The United States sued Rex and Lisa Hodges[4] to reduce the tax assessments against Rex to judgment and to foreclose its liens on the Hodgeses' property.[5] The government moved for summary judgment, seeking to reduce the assessments to judgment as a matter of law and seeking to enforce its liens against the property, but only

---

[3] A person becomes a "nominee" of a delinquent taxpayer if the IRS determines "the taxpayer has engaged in a legal fiction by placing legal title to property in the hands of a third party while actually retaining some or all of the benefits of true ownership." *United States v. Tingey*, 716 F.3d 1295, 1300 (10th Cir. 2013) (internal quotation marks omitted).

[4] The government also named as defendants Bank of America Mortgage, Midland Funding, LLC, and the Oklahoma Tax Commission as entities that might claim an interest in the property. The government, Oklahoma Tax Commission, and Bank of America Mortgage stipulated to their relative priorities. The district court granted default judgment against Midland Funding, LLC. None of these defendants is involved in this appeal.

[5] Rex also failed to pay his personal federal income taxes in 2011, and the government requested the court reduce this assessment to judgment. The district court granted summary judgment to the government on this claim in the amount of $2,549.28 plus interest. Rex did not dispute liability for these unpaid taxes in the district court and does not appeal this judgment.

4

on the liens "that arose by virtue of the assessments made *prior* to Rex Hodges' transferring the Property to his wife, Lisa Hodges." The government explained below that,

> [a]s a practical matter, if the United States' motion is granted and the property is ordered sold, the expected proceeds of sale will not satisfy the tax liens that arose prior to the transfer. Thus, there will be no need to determine whether Lisa Hodges is a nominee or fraudulent transferee.

The Hodgeses opposed the government's motion. Rex stipulated to the amount of the assessed penalties, but argued he had reasonable cause for not paying over the payroll taxes because he relied on others to pay them. In addition, Lisa filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). She argued the government had denied her due process rights by not granting her request for a Collection Due Process hearing. Lisa also denied that she had received the property through fraudulent transfer or as Rex's nominee.

The district court first granted the government summary judgment on reducing the assessments to judgment. The court found Rex's "reasonable cause" argument to be without evidentiary support and entered judgment in favor of the government for $1,905,040.84 (plus interest).

Next, the district court concluded the Hodgeses did not dispute the liens that attached *before* Rex transferred his interest in the property to Lisa, and it thus granted the government partial summary judgment with respect to these liens. These pre-transfer liens totaled $329,578.69 (plus interest). The court allowed the government twenty-eight days to notify the court if it decided to proceed to trial on the claim for the post-transfer

liens. But the government declined that opportunity because the expected proceeds from the sale of the property would not satisfy even the pre-transfer liens.

Finally, the district court denied Lisa's 12(b)(6) motion requesting that the court dismiss the government's claims against her ownership of the property. The court concluded the motion was improper for several reasons,[6] but relevant for our purposes, the court concluded that Lisa did not dispute "that the United States is entitled to the value of its liens before the transfer," and these liens were the only ones the government sought to enforce at summary judgment. It would have been premature to consider whether Lisa took the property as Rex's nominee or whether she was unfairly denied a hearing, as these issues are only applicable to the post-transfer liens.

The court entered an amended order of sale on June 27, 2016. Thereafter, Lisa requested "that the property be sold privately to her pursuant to a settlement agreement, in an effort to maximize the available proceeds from the sale of the Property." As part of the stipulation, the parties agreed that after paying settlement charges and the mortgage, Lisa would pay the IRS $82,000, and the IRS would discharge all federal tax liens on the property arising from the assessments against Rex. The district court entered an order approving the settlement on January 26, 2017.

Rex filed a timely notice of appeal on August 1, 2016. Although the district court granted partial summary judgment only, the district court's order was immediately

---

[6] The court also found the motion untimely because it was filed after the answer, and improper because Lisa attempted to include evidence outside the pleadings and asked the court to assess the sufficiency of the evidence.

appealable because the order of sale constituted irreparable harm. *See Kasishke v. Baker*, 144 F.2d 384, 386 (10th Cir. 1944) ("When the decree decides the right to the property in contest, and . . . directs it to be sold, . . . and the complainant is entitled to have such decree carried immediately into execution, the decree must be regarded as a final one to that extent, and authorizes an appeal to this court." (quoting *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 204 (1848)). And to the extent there were any issues outstanding at the time the court entered its judgment, they became moot when the government declined to proceed to trial on the post-transfer liens and the IRS discharged all liens against the property. Thus there are no further claims for the district court to resolve. We therefore have jurisdiction to hear this appeal under 28 U.S.C. § 1291.

## III.  DISCUSSION

Rex appeals the district court's grant of summary judgment to the government and the court's denial of the 12(b)(6) motion to dismiss. We review a district court's grant of summary judgment de novo. *Christy v. Travelers Indem. Co. of Am.*, 810 F.3d 1220, 1225 (10th Cir. 2016). We are not "limited to the grounds relied upon by the trial court but may uphold summary judgment on conclusions of law supported by the record." *City of Wichita v. Sw. Bell Tel. Co.*, 24 F.3d 1282, 1286 (10th Cir. 1994). We also review 12(b)(6) motions de novo, "applying the same legal standard applicable in the district court." *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to

state a claim for which relief may be granted." *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (internal quotation marks omitted).

Rex first argues the IRS wrongfully assessed I.R.C. § 6672 penalties because he did not act willfully in failing to pay over the taxes. Next, he contends the district court erred in ordering foreclosure of the property and denying the 12(b)(6) motion. We address each argument in turn.

### A. Reducing the Assessments to Judgment

Federal law requires employers to withhold federal income and social security taxes from their employees' wages. I.R.C. §§ 3102(a), 3402(a). The withheld taxes are called "trust-fund" taxes because they are held in trust for the benefit of the United States. I.R.C. § 7501(a); *Slodov v. United States*, 436 U.S. 238, 242–43 (1978). An employer may not use these reserved funds for any purpose. *See Finley v. United States*, 123 F.3d 1342, 1344 (10th Cir. 1997) (en banc). The employer is required to file quarterly returns and pay over the taxes through monthly or quarterly deposits. *Wood v. United States*, 808 F.2d 411, 414 (5th Cir. 1987).

If the employer fails to remit the withheld taxes, the IRS may seek the unpaid taxes from certain officers or agents of the employer.[7] *See* I.R.C. § 6671(b) (defining a "person" as "an officer or employee of a corporation, or a member or employee of a

---

[7] If an employer fails to remit the withheld taxes, the employee is not liable for a double payment. I.R.C. § 31(a); *Slodov v. United States*, 436 U.S. 238, 243 (1978). "Thus, unless the government has recourse against the person or persons responsible for nonpayment, the taxes will be lost." *Olsen v. United States*, 952 F.3d 236, 238 (8th Cir. 1991).

8

partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."). I.R.C. § 6672(a) provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax . . . [shall] be liable to a penalty[8] equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

Section 6672(a) can be broken down into two elements or requirements: (1) "responsible person": must be a person responsible for collecting, truthfully accounting for, and paying over any taxes imposed; and (2) "willfulness": that person must have acted willfully in failing to remit the taxes. *Smith v. United States*, 555 F.3d 1158, 1163 (10th Cir. 2009). But even if these two requirements are met, this circuit recognizes a "reasonable cause" exception, whereby the willfulness requirement "can be negated by showing the responsible person had reasonable cause for failing to pay withholding taxes held in trust for the government." *Finley*, 123 F.3d at 1343.

Although the government bears the initial burden to show evidence of the assessments, assessments are "entitled to a legal presumption of correctness." *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002). The burden is thus on Rex to show he was not a responsible person and did not willfully fail to remit the taxes in order to

---

[8] Although the statute refers to it as a "penalty," it is really just disgorgement because it "brings to the government only the same amount to which it was entitled by way of the tax." *Turnbull v. United States*, 929 F.2d 173, 178 n.6 (5th Cir. 1991) (internal quotation marks omitted); *see also Finley v. United States*, 123 F.3d 1342, 1348 (10th Cir. 1997) (en banc) ("[Section] 6672 penalties reflect only that amount of tax already collected or deducted by an employer and for which the employees have already received credit in their individual income tax returns.").

9

avoid summary judgment. To do this, he is required to "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [he bore] the burden of proof." *Muck v. United States*, 3 F.3d 1378, 1380 (10th Cir. 1993) (internal quotation marks omitted).

Rex concedes the amount of the assessments and that he is a "responsible person."[9] But he argues he did not act willfully because he had reasonable cause for not paying over the taxes.[10]

## 1. Willfulness and the Reasonable Cause Exception

Willfulness under § 6672 does not require "evil or fraudulent intent." *Hartman v. United States*, 538 F.2d 1336, 1341 (8th Cir. 1976). Instead, willfulness requires that an individual make a "voluntary, conscious and intentional decision to prefer other creditors over the Government" or show "a reckless disregard of a known or obvious risk that trust

---

[9] Although Rex concedes he is a "responsible person" under § 6672, he argues the district court erred in holding him liable because Mr. Stout and a Sand Springs employee, Jo Beth Becker, were also responsible persons. But the statute does not require exclusive authority. *Smith v. United States*, 555 F.3d 1158, 1163 (10th Cir. 2009) ("The responsible person generally is, but need not be, a managing officer or employee, and there may be more than one responsible person." (internal quotation marks omitted)). There is no dispute Rex had check-signing authority at all nursing homes, and his arguments with respect to who else had the authority and whether he exercised the authority are irrelevant to his liability.

[10] In his reply brief, Rex also contends the "payroll taxes assessed against Rex Hodges are a non-issue as the IRS has been levying his bank account for years. They never saw the need to reduce their liens to judgment before." Because he did not raise this argument until his reply brief, this argument is waived. *See Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1277–78 (10th Cir. 1994) (following "the general rule that appellate courts will not entertain issues raised for the first time on appeal in an appellant's reply").

funds may not be remitted to the government." *Denbo v. United States*, 988 F.2d 1029, 1033 (10th Cir. 1993) (internal quotation marks omitted). Willfulness is satisfied if a responsible person, after being notified that withheld payroll taxes have not been paid, fails to investigate or correct the mismanagement. *Id.*

But willfulness can be negated if the taxpayer meets the reasonable cause exception. In *Finley v. United States*, we recognized this exception as a means of avoiding a "strict liability" interpretation of § 6672, but held it should be "narrowly construed." 123 F.3d at 1346, 1348. We determined a taxpayer could avoid liability only when "(1) the taxpayer has made reasonable efforts to protect the trust funds, but (2) those efforts have been frustrated by circumstances outside the taxpayer's control." *Id.* at 1348.

Here, Rex does not deny that he had power to pay the taxes or that he knew they were not being paid—and therefore meets the definition of willful. He argues that he falls within an exception to liability for willful conduct because "a jury could determine [he] had reasonable cause for failing to pay withholding taxes." Specifically, Rex claims to qualify for the exception because: (1) of the "urgent necessity of caring for the nursing home residents"; (2) Gary Kading, the owner of three of the four nursing homes for which Rex was appointed temporary manager, promised Rex he would pay rehabilitation costs; and (3) he relied on an Oklahoma statute regarding a nursing home owner's responsibility for costs. We agree with the district court that, as a matter of law, none of these arguments places Rex within the reasonable cause exception.

11

*a. "Urgent Necessity of Caring for Nursing Home Residents"*

Rex claims he could not pay the payroll taxes because he had to "rescue the residents from the horrific conditions" they faced prior to his being appointed temporary manager, and that he "naively put all available funds[11] toward rehabilitation of the facilities and care of the residents." He claims he would have had to close the homes and that hundreds of employees would have been let go if he had paid over the taxes.

The reasonable cause exception negates willfulness only if the responsible person makes efforts to protect the trust funds and those efforts are frustrated by circumstances outside that person's control. First, Rex points to no evidence that could support a finding that he made reasonable efforts to protect the withheld taxes. In *Smith*, for example, we affirmed the district court's denial of a "reasonable cause" jury instruction because the defendant did not make "reasonable efforts to protect the trust funds," when he "knew the payroll taxes were overdue, knew that other creditors were being paid instead of the payroll taxes, and never took any direct action to pay the taxes." 555 F.3d at 1170. Rex admits he voluntarily and intentionally made the decision to pay operating expenses— including employees' net wages, his own salary, and other creditors—before paying over the taxes. Moreover, while Rex may claim the four nursing homes were in bad condition

---

[11] Rex incorrectly refers to the withheld payroll taxes as "available funds" that an employer can put toward other expenses. These funds are never "available" for an employer to use. The funds are taken from an employee's earnings to cover the employee's tax liability, and the employer is required to immediately put these funds into a trust account. *Finley*, 123 F.3d at 1344 ("The funds withheld from employee wages do not belong to the employer/corporation; they are funds held by the employer in trust for the government.").

when he took over as temporary manager, there are no such allegations with respect to Sand Springs, the center Rex invested in and managed. Rex made a choice—one he was not required to make—to pay himself and other expenses before remitting the payroll taxes.

Second, financial concerns do not constitute "circumstances outside the taxpayer's control." Virtually every violation of § 6672 occurs because a business is in financial straits. *See, e.g.*, *Finley*, 123 F.3d at 1343–44; *Smith*, 555 F.3d at 1160–61; *Denbo*, 988 F.2d at 1031; *see also Sorenson v. United States*, 521 F.2d 325, 328 (9th Cir. 1975) ("[T]he payment of net wages in circumstances where there are no available funds in excess of net wages from which to make withholding is a willful failure to collect and pay over under § 6672."). Thus, the financial condition of the homes is not sufficient to qualify Rex for the reasonable cause exception.

### b. Reliance on Mr. Kading's Assurances

Rex next claims he meets the reasonable cause exception because Gary Kading, the owner of three of the four nursing homes for which Rex was appointed temporary manager, "promised . . . that he would pay for all the rehabilitation costs." A similar argument was made—and rejected—in *Denbo*. There, the defendant claimed willfulness was not met because he relied on his co-owner's and the accountants' assurances that the "taxes were being taken care of." *Denbo*, 988 F.2d at 1031. The court held:

> Denbo cannot escape liability by claiming that he relied on the assurances of others. . . . Denbo willfully failed to remit federal payroll taxes because he was aware that the corporation had defaulted in its payment of employment taxes but nevertheless disregarded a known risk by relying on the assurances of [his co-owner] instead of doing more.

13

*Id.* at 1033–34 (citations omitted).

Here, Rex willfully failed to remit the withheld taxes because he knew the nursing homes were not paying over the taxes, and he bore the responsibility for making these payments. He cannot now claim reliance on Mr. Kading's promise to pay rehabilitation expenses as justification for not remitting the payroll taxes to the IRS. Rex knew the *payroll taxes* were not being paid over, and, unlike in *Denbo,* nothing in Mr. Kading's promise to pay the *rehabilitation expenses* suggests otherwise. Moreover, Mr. Kading was not involved in the fourth nursing home or in Sand Springs, so Rex could not claim his failure to remit the payroll taxes withheld at these homes resulted from any assurances from Mr. Kading to pay expenses.

Nevertheless, Rex notes that this circuit decided *Denbo* before we adopted the reasonable cause exception in *Finley*, and he suggests that it is therefore no longer controlling. But we held in *Finley* that we would "continue to apply the established paradigms to identify willful conduct as a matter of law," and that we would "expressly recognize a reasonable cause exception to the application of those paradigms." *Finley*, 123 F.3d at 1348. Thus, we now consider whether Rex meets the reasonable cause exception to the paradigm recognized in *Denbo*.

The facts of *Finley* are easily distinguishable. There, the defendant first directed an employee to pay the payroll tax, and the employee failed to do so. 123 F.3d at 1343. The defendant next deposited a $105,000 check with the bank, instructing the bank to use the money to pay the taxes, but the bank refused and paid other loans instead. *Id.* at 1344. We

14

held that those facts required a new trial so the defendant could present evidence on the newly adopted reasonable cause exception. *Id.* at 1349–50.

And in *Howell v. United States*, the defendant would leave funds in a trust account as a "cushion" for making tax payments but was unable to do so after the "improper and unauthorized actions of the underwriters in seizing control of the company and the accounts and directing the payment of funds in a manner contrary to his past practice." 164 F.3d 523, 527 (10th Cir. 1998). We reversed summary judgment granted to the government and remanded for a new trial after determining there was a disputed issue of material fact on whether the defendant's efforts to protect the trust funds were "frustrated by circumstances beyond his control." *Id.*

Unlike *Finley* and *Howell*, Rex has presented no evidence that he made any efforts to pay the taxes and has failed to show any outside circumstances interfering with his efforts to do so. Mr. Kading's alleged promises to pay the rehabilitation expenses at some of the homes fall well short of evidence that Rex attempted to protect the trust funds but was frustrated in his efforts. Accordingly, Rex has not raised an issue of fact with respect to the reasonable cause exception.

### c. Reliance on 63 Oklahoma Statute § 1-1914.2

Finally, Rex claims he had reasonable cause for not paying over the taxes because of an Oklahoma statute that was cited in the order appointing him as temporary manager. The statute provides:

> If funds are insufficient to meet the expenses of performing the powers and duties conferred on the temporary manager, the temporary manager may borrow the funds or contract for indebtedness as necessary. . . . If such

15

advances are not repaid in full, any amount not repaid shall constitute a lien against any and all assets of any owner . . . .

Okla. Stat. tit. 63, § 1914.2(G).

This statute says nothing about taxes, nor does it attempt to preempt § 6672. Although the owner is liable for unpaid debt undertaken to meet expenses, the statute does not immunize a responsible person who, despite having the withheld payroll taxes available to pay the IRS, willfully fails to do so, without reasonable cause. Because Rex bore the burden of showing he was not liable under § 6672, and he has failed to "set forth specific facts showing that there is a genuine issue for trial as to those dipositive matters for which [he bore] the burden of proof," *Muck*, 3 F.3d at 1380, we affirm the district court's decision to reduce the assessments to judgment.

### B. Foreclosure

Rex next challenges the district court's grant of summary judgment allowing the IRS to foreclose on the property to satisfy the tax liens that attached prior to Rex's transfer of his interest to Lisa. He also appeals the court's denial of the 12(b)(6) motion to dismiss. We affirm because (1) Rex has waived any arguments regarding the validity of the pre-transfer liens, and (2) the arguments regarding the post-transfer liens are moot because the IRS has now discharged all outstanding federal tax liens on the property.

### 1. Validity of Pre-Transfer Liens

The district court concluded that the Hodgeses presented no evidence or argument opposing the validity of the pre-transfer liens. And in granting summary judgment, the district court allowed foreclosure on only the pre-transfer liens, stating: "This does not

16

include or adjudicate any liens on the Property post-transfer." On appeal, Rex does not dispute the district court's findings with respect to the pre-transfer liens, and instead challenges the government's liens on the property that post-date the transfer. Although one of his arguments also implicates the validity of the pre-transfer liens, it fails on the merits.

Rex contends that because Lisa took the property without notice of the liens that attached to Rex's interest, she took the property free of that liability, and thus the district court erred in allowing the IRS to foreclose. This is incorrect. A federal tax assessment against a person automatically creates "a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." I.R.C. § 6321. And, by operation of law, the liens arise "at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." *Id.* § 6322. It is undisputed that the IRS assessed the first § 6672 penalties on February 16, 2004, for $329,578.69 (excluding interest). These assessments immediately created a lien that exceeded Rex's interest in his property, and that lien survived the transfer of Rex's interest in the property to Lisa on April 30, 2004. *See Russell v. United States*, 551 F.3d 1174, 1179 (10th Cir. 2008) ("The transfer of the attached property does not affect the lien because no matter into whose hands the property goes, the property passes *cum onere*, or with the lien attached." (internal quotation marks omitted)); *see also United States v. Jepsen*, 131 F. Supp. 2d 1076, 1085 (W.D. Ark. 2000) (holding a taxpayer "cannot avoid or defeat liability by disclaiming or

17

renouncing interest in the property or transferring or conveying the interest" after a lien has properly attached). Therefore, whether Lisa had notice of the pre-transfer liens does not affect the government's ability to foreclose on them post-transfer.

## 2. Arguments Regarding Post-Transfer Liens

The 12(b)(6) motion filed in the district court argued that: (1) the government denied Lisa due process by not granting her request for a Collection Due Process hearing, and (2) Lisa did not receive the property through fraudulent transfer or as Rex's nominee. The district court denied the motion because Lisa did not dispute "that the United States is entitled to the value of its liens before the transfer," and these liens were the only ones the government sought to enforce at summary judgment.[12] Thus, all of the arguments in support of the 12(b)(6) motion pertained to issues regarding the government's attempts to enforce post-transfer liens, which the district court concluded were premature. After summary judgment on the pre-transfer liens was granted, the government discharged the liens and waived any claims that Lisa took the property as nominee or fraudulent transferee. Accordingly, the arguments raised by the motion to dismiss are moot.

Nonetheless, on appeal Rex continues to make arguments with respect to issues regarding liens that attached post-transfer. He claims the government misrepresented

---

[12] The district court also denied the motion because Lisa "incorrectly include[d] evidence outside the pleadings and look[ed] for the Court to assess the sufficiency of the evidence." The Hodgeses never disputed this ruling and on appeal Rex continues to assert that "[e]vidence and the record clearly demonstrate there are sufficient grounds whereby a reasonable jury could find the assertions of the Government questionable and those of Defendants reasonable." We therefore also affirm the denial of the motion on this alternative ground.

18

several facts in its complaint, including that (1) Rex lived on the property continuously, (2) Lisa paid no valid consideration for Rex's interest, (3) mortgage payments were made from a joint checking account, and (4) Rex was a co-borrower on the mortgage. Even if each of these representations is false, the district court is correct that none is relevant to the only issue on summary judgment: whether the pre-transfer liens were valid and enforceable.

Next, Rex argues the foreclosure violates due process because Lisa was not given a Collection Due Process hearing after she received notice of the nominee liens. Rex claims "the Government sent the notice of the hearing, a hearing was timely requested, and [the government] was never heard from . . . causing the denial of due process." But, even if Rex could assert Lisa's due process rights, the Collection Due Process hearing is not relevant to the validity of the pre-transfer liens. Whether Lisa could be liable as nominee for any liens that attached post-transfer was not decided on summary judgment and is now moot because the IRS has discharged all liens against the property.

Finally, Rex claims the government violated the statute of limitations because the "general rule is that an assessment of tax must be made within three years from the date a return is filed or the due date of the return, whichever is later." And because Lisa did not receive the notice of nominee lien until January 26, 2015, eleven years after the first liens attached, Rex contends the district court should have dismissed the action.

Because Rex never made this argument below and does not argue for plain error on appeal, he has waived it. *United States v. Abdenbi*, 361 F.3d 1282, 1289 (10th Cir. 2004) ("The well-settled law of this circuit is that issues not raised in district court may

19

not be raised for the first time on appeal."). But even if he had made the argument, the Internal Revenue Manual's rule does not support it. The Manual says an "assessment" must be made within three years of the violation. It does not say that once an assessment has been made, it expires after three years. And the notice of nominee lien is not an "assessment." Rex does not claim the IRS made the assessments more than three years after the relevant tax period in which the taxes were due. We therefore affirm the foreclosure on the pre-transfer liens.

## IV.    CONCLUSION

Rex has failed to meet his burden to show he is not liable for the assessed § 6672 penalties. He concedes he is a responsible person and also concedes the amount of the assessments. And he cannot qualify for the reasonable cause exception because he did not come forward with any evidence of efforts to protect the withheld taxes or to demonstrate that outside circumstances frustrated those efforts. We therefore affirm the district court's summary judgment decision reducing these assessments to judgment.

In addition, Rex has presented no evidence or arguments disputing the validity of the pre-transfer liens. All of his arguments with respect to the foreclosure focus on post-transfer liens, which the IRS discharged and thus are not at issue in this appeal. We therefore affirm the district court's order allowing foreclosure of the property.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

20